IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FAUSTO FALZONE, )<br>)<br>    *Pro se Plaintiff,* )<br>)<br>vs. )<br>)<br>FORT BEND COUNTY, and )<br>)<br>RODERICK GLASS, individually and )<br>in his official capacity as the Fort Bend )<br>County Chief Public Defender; and )<br>)<br>RAQUEL LEVY, individually and in her )<br>official capacity as Fort Bend County )<br>Indigent Defense Coordinator. )<br>)<br>    *Defendants.* )<br>) | Civil Action No.: TBA<br>(Jury Demanded) |

## PLAINTIFF'S ORIGINAL COMPLAINT

### SUMMARY

This case is about the quality of public defense in Texas; and the people's right to know about it. The County's late assignments of counsel violated *Rothgery v. Gillespie County*, 554 U.S. 191 (2008). When Plaintiff criticized the late assignments and the quality of the County's public defense, the County terminated Plaintiff's employment.

Plaintiff sues Defendants individually and collectively under 5 counts, based on violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. See Also *Garcetti v. Ceballos*, 547 US 410 (2006). The

1

unlawful termination unfairly prejudiced Plaintiff. In addition to lost wages and benefits, Plaintiff suffered emotional distress, diminished reputation, diminished job opportunities, and financial damages. Plaintiff seeks reinstatement of his employment, attorney's fees, and damages to be determined.

**PARTIES**

1. Plaintiff Fausto Falzone ("Plaintiff") resides in Yuma, Arizona.

2. Between March 2022 and January 2024, Plaintiff worked for Defendant Fort Bend County ("County") and Defendant Chief Public Defender Roderick Glass ("Public Defender"), in his official capacity as the Fort Bend County Chief Public Defender. Defendant Raquel Levy ("Indigent Defense Coordinator") was the Fort Bend County Indigent Defense Coordinator.

3. The County is a Texas governmental entity doing business in the State of Texas, United States. Defendant County maintains its principal place of business at 301 Jackson St., Richmond, TX 77469.

4. Fort Bend County Chief Executive Office KP George may accept service of process for the County at 301 Jackson St., Richmond, TX 77469.

5. Defendant Roderick Glass is an individual resident of the State of Texas. He is currently the Fort Bend County Chief Public Defender. He may accept service of process at 301 Jackson St., Richmond, TX 77469.

6. Defendant Raquel Levy is an individual resident of the State of Texas. She may accept service of process at 301 Jackson St., Richmond, TX 77469.

7. During all of the times described in this Complaint, the parties' residency, official capacities, employment, and corporate statuses were and remained the same.

# JURISDICTION

Plaintiff brings this action under 42 U.S.C. §§ 1982 and 1985, for the violation of Plaintiff's first amendment rights, equal protection rights, and civil rights. Thus, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

### The First Amendment protects speech related to matters of public concern

As the United States Supreme Court put it,

> "speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment… it is essential that … [public employees] be able to speak out freely on such questions without fear of retaliatory dismissal… public employees "are uniquely qualified to comment" on "matters concerning government policies that are of interest to the public at large." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

### The quality of the Texas public defense system is of public concern

According to the Texas Indigent Defense Commission ("TIDC"),

> "[t]he Texas Legislature created the Texas Task Force on Indigent Defense in 2001 **to remedy persistent deficiencies** in Texas indigent defense: Access to counsel … Quality of counsel … Data collection. In 2011, the Task Force became the Texas Indigent Defense Commission." (emphasis added). *See* https://www.tidc.texas.gov/about-us/who-we-are/.

The TIDC's mission is to protect the right to counsel and improve public defense. Its vision is excellent representation for all.

The quality of Texas public defense is an ongoing public concern:

3

On August 19, 2019, The Texas Tribune wrote, "How judicial conflicts of interest are denying poor Texans their right to an effective lawyer." *See* https://www.texastribune.org/2019/08/19/unchecked-power-texas-judges-indigent-defense/.

On February 22, 2023, The Texas Observer wrote, "Defense Denied. Many poor Texans are being short-changed on their right to be represented by a defense attorney in cases with potentially life-changing consequences. *See* https://www.texasobserver.org/texas-public-defenders-defense-denied/.

On March 16, 2023, The Texas Tribune published the following article: "In rural counties, Texas law puts low-income defendants at a disadvantage." *See* https://www.texastribune.org/2023/03/16/rural-texas-attorney-shortage-legislature/.

On June 23, 2023, the Austin Chronicle wrote, Travis County Tries to Fix Its Public Defense Problems. But advocates warn about the middleman." *See* https://www.austinchronicle.com/news/2023-06-23/travis-county-tries-to-fix-its-public-defense-problems/.

On January 2, 2024, The Houston Chronicle wrote, "Here's what to expect if you've been appointed a criminal defense lawyer in Harris County: Harris County has struggled for decades to provide adequate legal representation to criminal defendants who can't afford it. But as the Houston Chronicle exposed over the past year, even though the county now has a public defender's office and spends tens of millions of dollars paying additional private "court-appointed" attorneys to take indigent cases, many people still aren't getting a fair shake." *See* https://www.houstonchronicle.com/news/investigations/article/faq-defense-lawyer-houston-18571103.php.

**Plaintiff's employment with Fort Bend County**

1. In March 2022, Plaintiff began his employment with the Fort Bend County Public Defender's Office. Plaintiff was an Assistant Public Defender Immigration Specialist. Plaintiff handled the 'Padilla' Immigration Consultations for the Public Defender's Office and the Fort Bend County private bar. Plaintiff also personally represented people charged with misdemeanors and felonies.

2. Many of the County criminal courts had bizarre, problematic, and arguably unlawful policies and practices. For example, even though Texas law requires the presence of defendants at

4

arraignments, the County did 'not transport detained defendants to arraignments.' Under this practice, many detained defendants would not appear in court until they actually plead guilty or the trial started.

3. Similarly, accused people remained in pretrial detention without formal charges. In addition to the required probable cause for the arrest, Texas requires probable cause for *the continued detention. Ex parte Garcia*, 547 S.W.2d 271, 275 (Tex. Crim. App. 1977). However, many defendants languished in pretrial detention without a charge for weeks and months.

### The County's delayed assignment of indigent counsel

4. In *Rothgery v. Gillespie County*., 554 U.S. 191 (2008), Mr. Rothgery sued Gillespie County under 42 U.S.C. § 1983. According to Mr. Rothgery, Gillespie County violated his Sixth and Fourteenth Amendment right to counsel, by following a policy of denying appointed counsel to arrestees released from jail on bond; and *by failing to adequately train and monitor* those involved in appointment-of-counsel process. The Supreme Court concluded: Texas Magistrate Court hearings trigger attachment of the Sixth Amendment right to counsel.

5. Under Plaintiff's understanding, the Fort Bend County's late assignments also often violated *Rothgery v. Gillespie County* (supra). For example, in *State v. Paz-Zuniga*, 22-DCR-100315, Mr. Paz-Zuniga was in pre-trial detention without assigned counsel for 64 days. When Plaintiff took over the case, Plaintiff filed several motions and requested a speedy trial. The State dismissed the case in a matter of weeks. In *State v. Ramos-Hernandez*, 22-DCR-100317, Mr. Ramos-Hernandez was in pretrial detention without assigned counsel for 37 days. In *State*

*v. Pineda-Velasquez*, 23-DCR-104238, Mr. Pineda-Velasquez was in pretrial detention without counsel for 43 days.

6. A review of some cases revealed the reasons and patterns for the delayed assignments. Defendants appeared before the Magistrate; and the Indigent Defense Office simultaneously assessed indigency. However, the Indigent Defense Office assessed indigency based on pre-arrest finances, mostly employment income. There was no follow up assessment. This, coupled with the slow processes and County's refusal to 'transport people to court' meant indigent detained defendants languished in jail without counsel for weeks or months.

7. The Public Defender was well aware of the situation. The Public Defender's Office represented almost all defendants at the Magistrate hearings. The Public Defender's Office also represented some defendants in their case in chief.

## Mr. Pineda-Velasquez's late assignment and motion to suppress

8. In July 2023, Mr. Pineda appeared before the Magistrate. Based on his pre-arrest employment, the Indigent Defense Office found him non-indigent. Thus, Mr. Pineda-Velasquez remained in jail without counsel and without going to Court.

9. After 27 days, Mr. Pineda had not had appeared in court, was still in jail, and did not have an attorney. On the 27th day, detectives for the State interviewed Mr. Pineda in jail. Forty five days after his arrest, the Court finally assigned Plaintiff to Mr. Pineda's case.

10. Shortly after taking over Mr. Pineda-Velasquez's case, Plaintiff filed a motion to suppress the fruits of the jail interview. Plaintiff subpoenaed Defendant Indigent Defense Coordinator (Ms.

Levy) and a member of the Indigent Defense Coordinator staff. The suppression hearing was set to go.

11. Upon receipt of the subpoenas in October 2023, the Indigent Defense Coordinator threw a fit. According to her, she and her assistant did not need to testify. She called the Public Defender and Plaintiff. She violently complained, screamed, and threatened "to speak with … [her] judge." This "judge" was supposedly County Manager Judge KP George, or the Chief Administrative Judge.

12. The Public defender was not personally involved in Mr. Pineda-Velasquez's representation. He did not enter an appearance. He did not supervise the case.

13. The Indigent Defense Coordinator and the Public Defender hand in hand coordinated the elimination of the Indigent Defense Coordinator's and her assistant's testimony at the suppression hearing. The conspiracy plan was twofold: convince Plaintiff to release the subpoenas, or sua sponte cancel the subpoenas altogether.

14. The Indigent Defense Coordinator was very much involved in the release of her own subpoena and that of her assistant. At one point, the Indigent Defense Coordinator even commented something like, 'I thought … [Plaintiff's supervisor] had already told Plaintiff about the release.'

**Defendant Public Defender's proposition to Plaintiff**

15. In October 2023, after speaking with the Indigent Defense Coordinator, the Chief Public Defender briefly approached Plaintiff about the subpoenas. The Public Defender said: if the Indigent Defense Coordinator has to appear, the "judge would get upset." According to the Public Defender, Plaintiff should proceed on the suppression hearing without the witnesses.

16. Then, at the end of October 2023, a few days before the hearing and without any notice to Plaintiff, the Public Defender released the witnesses from the subpoenas, which left Mr. Pineda-Velasquez without the witnesses for the suppression hearing. The Public Defender and the Indigent Defense Coordinator unilaterally withheld testimonial evidence favorable to defendant.

### Plaintiff's critique on his Motion to Withdraw

17. Through a motion to withdraw and attached sworn affidavit, Plaintiff's protested the Public Defender's release of the subpoenas. The motion criticized the Public Defender, and indirectly accused him of potential ethical violations.

18. The Public Defender retaliated against Plaintiff's speech. In early November 2023, the Public Defender removed Plaintiff of all the criminal cases.

19. Then, through an e-mail to a listserve, Plaintiff criticized the County's public defense system. According to Plaintiff's email, the County's public defense system was corrupt, like a third world country or worse.

20. In retaliation, in January 2024, the Public Defender fired Plaintiff. The Public Defender showed Plaintiff the e-mail. The Public Defender offered Plaintiff resignation or termination. Since Plaintiff did not resign, the Public Defender terminated Plaintiff's employment.

21. The termination letter stated two reasons for the termination: "insubordination" and "violation of County policy." Plaintiff requested the details of the alleged 'insubordination" and "violation of County policy." But Defendants provided no details or facts.

22. Finding that Plaintiff's alleged misconduct was unrelated to his employment, The Texas Workforce Commission approved Plaintiff's unemployment claim. Defendants did not challenge the unemployment decision.

**<u>Plaintiff's Complaint to the U.S. Department of Justice and his critique of the Public Defender and the County's system are all First Amendment protected speech, because the quality of Texas indigent defense is a matter of public concern</u>**

23. As the United States District Court for the District of Utah held,

    "a public defender is not amenable to administrative direction in the same sense as other employees of the State… a defense lawyer is not, and by the nature of his function cannot be, the servant of an administrative superior… "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." Id. at 321, 102 S.Ct. 445 (quoting DR 5-107(B), ABA Code of Professional Responsibility (1976))." (emphasis added). *Law Office of Samuel P. Newton v. Weber* Cnty., 491 F. Supp. 3d 1047, 1065 (D. Utah 2020).

24. Plaintiff's Complaint to the U.S. Department of Justice denounced the County's delayed assignments, which is about the quality of indigent defense. The First Amendment protects such speech against the government. Any person, whether public employee or not, can file such complaints.

25. Similarly, Plaintiff's motion to withdraw and affidavit criticized the Public Defender. The Public Defender's releasing the Indigent Defense Coordinator's subpoena withheld favorable testimonial evidence. The release directly or indirectly perpetuated the ongoing county-wide delayed assignments. Plaintiff's motion fundamentally protests the Public Defender's Office's lack of independence and the quality of public defense, all issues of public concern; and all issues any person, whether public employee or not, can complaint about.

26. Finally, Plaintiff's e-mail criticizes the County's public defense's system. The e-mailed exposed the Public Defender's and Indigent Defense Coordinator's conspiracy. The e-mail brought to light Defendants' actual and potential nonfeasance and malfeasance, which squarely fall under First Amendment's protection. Plaintiff's decry was not about individual personal employment grievances; it was about public issues: the quality of public defense and the County's responsibility for the deficiencies. That decry any person could have raised, whether employee or not.

27. The First Amendment not only protects Plaintiff's speech; it encourages Plaintiff's speech, because public employees are sometimes in the best position to decry government deficiencies. See *Lane v. Franks*, 573 U.S. 228, 240 (2014). Indeed, Plaintiff's concerns are those only a public defender can generally raise. Wealthy defendants do not have to worry about the Indigent Defense Coordinator's or the County Manager's wrath.

### **Plaintiff's duties did not require Plaintiff's speech**

28. Defendants did not commission Plaintiff's speech. Plaintiff's speech was not routine. The speech was outside any potential chain of command. Even though the County paid Plaintiff's salary, Plaintiff owed the undivided loyalty to his clients, not to the Public Defender, to the Indigent Defense Coordinator, or to the local boss.

**Defendants' interests do not outweigh society's First Amendment interests**

29. Defendants hide under the disguise of discipline to suppress protected speech. Ignoring Sixth Amendment's violations was never part of Plaintiff's employment. Plaintiff never agreed to withhold evidence against his clients. Plaintiff never agreed to ignore the County public defense system's deficiencies. The public has a right to know, whether Defendants like it or not.

**Count One**

**First Amendment Violation under 42 U.S.C. § 1983**

Between October 25, 2023 and roughly January 2, 2024, while acting in his official capacity as the Fort Bend County Public Defender, the Public Defender violated Plaintiff's First Amendment rights, applicable to Texas through the Fourteenth Amendment of the United States Constitution, by first removing Plaintiff of all his assigned criminal cases; and second, by terminating Plaintiff's employment. The Public Defender unlawfully demoted and terminated Plaintiff, because of Plaintiff's critique of the Public Defender's actions and inactions as the Public Defender. Thus, the Public Defender unlawfully violated Plaintiff's First Amendment rights.

The County is liable for the Public Defender's violations of Plaintiff's First Amendment violations, because the Public Defender violated Plaintiff's First Amendment rights in and while acting as a Public Defender for the County.

Defendant Indigent Defense Coordinator is liable for Plaintiff's unlawful termination, because her actions, conspiracy, threats, etc., precipitated the unlawful termination.

**Count Two**

**Obstruction of Justice under 42 U.S.C. § 1985(2), based on indigent status**

Between October 25, 2023 and January 2, 2024, while acting in their official capacities, the Public Defender and the Indigent Defense Coordinator violated Plaintiff's rights under 42 U.S.C. § 1985(2), by conspiring to obstruct justice and or intimidate Plaintiff on account of his status as assigned indigent defense counsel. The Public Defender and Indigent Defense Coordinator conspired to impede, hinder, obstruct, or defeat the due course of justice in the State of Texas, with intent to deny Plaintiff the equal protection of the laws. More specifically, the Public Defender and Indigent Defense Coordinator conspired to impede, hinder, obstruct, or defeat Plaintiff's subpoena of the Indigent Defense Coordinator and her assistant, with the intent of depriving Plaintiff his subpoena power, on account of Plaintiff's status as an assigned indigent defense criminal attorney. *But for Plaintiff's status as an assigned counsel*, Defendants would not have strong-armed Plaintiff.

Defendant County is liable, because, as stated above, the Public Defender and the Indigent Defense Coordinator violated 42 U.S.C. § 1985(2), while acting in their official capacities as the Fort Bend County Public Defender and Fort Bend County Indigent Defense Coordinator.

## **Count Three**

## **Obstruction of Justice under 42 U.S.C. § 1985(2), based on equal protection**

Between October 25, 2023 and January 2, 2024, while acting in their official capacity as the Fort Bend County Public Defender and Fort Bend County Indigent Defense Coordinator, the Public Defender and the Defendant Indigent Defense Coordinator violated Plaintiff's rights under 42 U.S.C. § 1985(2), by conspiring to obstruct justice and or intimidate Plaintiff on account of his status as assigned indigent defense counsel. The Public Defender and Indigent Defense Coordinator conspired to impede, hinder, obstruct, or defeat the due course of justice in the State of Texas, with intent to deny Plaintiff the equal protection of the laws. More specifically, the Public Defender and Indigent Defense Coordinator conspired to impede, hinder, obstruct, or defeat Plaintiff's subpoena of the Indigent Defense Coordinator and her assistant, with the intent of depriving Plaintiff his subpoena power on account of Plaintiff's status as an assigned indigent defense criminal attorney. *But for Plaintiff's status as an assigned counsel*, Defendants would not have strong-armed Plaintiff.

Defendant County is also liable, because as stated above, the Public Defender and the Indigent Defense Coordinator acted in their official capacities.

## Count Four

## Obstruction of Justice under 42 U.S.C. § 1985(2), for preventing Plaintiff's enforcement of Mr. Pineda-Velasquez's rights

Between October 25, 2023 and January 2, 2024, while acting in their official capacities as the Fort Bend County Public Defender and Fort Bend County Indigent Defense Coordinator, the Public Defender and the Indigent Defense Coordinator violated Plaintiff's rights under 42 U.S.C. § 1985(2), by conspiring to obstruct justice and or intimidate Plaintiff on account of his status as assigned indigent defense counsel. The Public Defender and the Indigent Defense Coordinator conspired to impede, hinder, obstruct, or defeat, the due course of justice in Texas, with the intent to deny to Plaintiff and Mr. Pineda-Velasquez the equal protection of the laws, or to injure Plaintiff or his property for lawfully enforcing, or attempting to enforce, the Sixth Amendment rights of Mr. Pineda-Velasquez, or those indigent similarly situated, the equal protection of the laws. More specifically, the Public Defender and Defendant Indigent Defense Coordinator conspired to avoid Plaintiff's enforcement of Mr. Pineda-Velasquez's Sixth Amendment rights to confrontation and compulsory process, by conspiring to impede, hinder, obstruct, or defeat the appearance and testimonial evidence of the Indigent Defense Coordinator and the Indigent Defense Staff Member at Mr. Pineda-Velasquez's suppression hearing. Defendant Chief Public Defender and Defendant Indigent Defense Coordinator's conspiracy was on account of Plaintiff's status as an assigned indigent defense counsel and Mr. Pineda-Velasquez's status as an indigent. *But for Plaintiff's and Mr. Pineda-Velasquez's statutes*, the conspirators would not have successfully strong-armed Plaintiff or avoided the appearances and testimonial evidence.

The County is also liable for the Public Defender's and the Indigent Defense Coordinator's actions, because as stated above, the Public Defender and the Indigent Defense Coordinator committed the violations while acting in their official capacities.

## Count 5

## Deprivation of Plaintiff's rights and privileges under 42 U.S.C. § 1985(3)

Between October 25, 2023 and January 2, 2024, in the State of Texas, the Public Defender and Indigent Defense Coordinator directly or indirectly conspired to deprive Plaintiff the equal protection of the laws and the equal privileges and immunities under the laws. More specifically, Defendants conspired to prevent Plaintiff's right and privilege to effectively represent Mr. Pineda-Velasquez, to enforce the subpoenas, and to effectively enforce Mr. Pineda-Velasquez's Sixth Amendment rights, through the elimination of the Indigent Defense Coordinator's and the Indigent Staff Member's testimonial evidence at the suppression hearing.

The Public Defender and Indigent Defense Coordinator conspired for the purpose of preventing or hindering the State of Texas from giving or securing Plaintiff and Mr. Pineda-Velasquez the equal protection of the laws. More specifically, Defendants conspired to prevent or hinder the State of Texas from giving or securing Plaintiff and Mr. Pineda-Velasquez a full and fair suppression hearing.

Defendants' conspiracy injured Plaintiff in his person and property. The conspiracy compromised Plaintiff's complete ability to effectively represent Mr. Pineda-Velasquez, compromised Plaintiff's license to practice law by subjecting Plaintiff to future grievances, and eventually led to Plaintiff's demotion and termination.

Defendants' conspiracy deprived Plaintiff of having or exercising his right and or privilege to effectively represent Mr. Pineda-Velasquez, pursue his power to subpoena, protect the client's interests without undue influence or coercion, and fulfill Plaintiff's duties without undue harassment. Plaintiff's and Mr. Pineda-Velasquez's *statuses* were the genesis, plan, and objective of Defendants' actions.

## Conclusion

Defendant County is liable, because as stated above, the Public Defender and the Indigent Defense Coordinator committed the acts while acting in their official capacities and with final policy making authority. For the reasons stated herein, Defendants are jointly and severally liable for the constitutional violations under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request the entry of a judgment in his favor and against Defendants as follows:

A. A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Defendants' actions violated plaintiff's First Amendment rights to speak on matters of public concern and to petition the government for redress.

B. A judgment awarding compensation to Plaintiff for his economic loss, emotional distress and other personal injury resulting from the violations of his constitutional rights.

C. A judgement assessing punitive damages against the individual Defendants, if the jury so finds.

D.   A judgment awarding Plaintiff his costs of suit, including reasonable attorney fees and litigation expenses, under 42 U.S.C. § 1988.

E.   A judgment awarding Plaintiff interest on economic losses to the extent permitted by law.

F.   A judgment awarding such other and further relief, including equitable relief, to which Plaintiffs may be entitled.

DATED this 30TH day of June, 2024.

/s/ Fausto Falzone
Fausto Falzone, Esq.
*Pro Se Plaintiff*
TX Bar No. 24095201
SDTX No. 1154628